AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
**6/7/2022**
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ CO ____ DEPUTY

|  |  |
|---|---|
| United States of America<br><br>v.<br><br>JOSE ANGEL DEL VILLAR, aka "Angel" and "Jose Angel Del Villar Ramirez,<br>LUCA SCALISI, and<br>JESUS PEREZ ALVEAR, aka "Chucho,"<br><br>Defendants | FILED<br>CLERK, U.S. DISTRICT COURT<br><br>**June 7, 2022**<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ ch _____ DEPUTY<br><br>Case No.    2:22-mj-02255-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of between April 6, 2018 and March 30, 2019 in the county of Los Angeles in the Central District of California, the defendants violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 1906(a); 1904(c)(2) | Conspiracy to Transact in Property of Specially Designated Narcotics Traffickers |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Lauren Radke
*Complainant's signature*

Lauren Radke, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    June 7, 2022

*Paul L. Abrams*
*Judge's signature*

City and state:    Los Angeles, California    Hon. Paul L. Abrams, Chief U.S. Magistrate Judge
*Printed name and title*

AUSA: B.Balding (x2274)

**AFFIDAVIT**

I, Lauren N. Radke, being duly sworn, declare and state as follows:

**INTRODUCTION**

1.    I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  As such, I am empowered to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since January 2017.  I received basic law enforcement training at the FBI Academy in Quantico, Virginia from January 2017 to June 2017.  This training included segments on conducting criminal investigations, narcotics identification, gangs and other law enforcement topics.  I am currently assigned to the Los Angeles Strike Force DEA SWB1/FBI CE-1 ("LASF").  The LASF is a task force comprised of agents and officers from federal, state, and local agencies, including the Drug Enforcement Administration ("DEA"), Homeland Security Investigations ("HSI") and the Internal Revenue Service ("IRS"), assigned to investigate large-scale narcotics trafficking and money laundering. Prior to becoming a SA, I was employed as an Investigative Specialist for the FBI from June 2013 to January 2017.  During this time, I conducted discreet vehicle and foot surveillance on subjects in support of numerous counterterrorism and counterintelligence investigations.  Since completing the FBI Academy in June 2017, I have participated in several drug trafficking investigations

involving the court-authorized interception of wire and electronic communications.  I have participated in investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, photographs, and other documents.  I have directed and assisted in the handling of confidential sources to gather intelligence through various methods, including through consensual recordings.  I have also conducted investigations in which I have used Global Positioning System ("GPS") information to locate and track persons who are the subjects of criminal investigations. Based on my training and experience, I know money launderers and narcotics traffickers often use coded language when discussing money laundering and narcotics trafficking activities.  I have participated in money laundering and narcotics investigations where I have deciphered monitored calls containing coded language.  I have become familiar with many of the methods of operation used by narcotics traffickers and money launderers.

## PURPOSE OF AFFIDAVIT

2.  This affidavit is made in support of a criminal complaint and arrest warrants against JOSE ANGEL DEL VILLAR, aka "Angel," aka "Jose Angel Del Villar Ramirez" ("DEL VILLAR"), LUCA SCALISI ("SCALISI"), and JESUS PEREZ ALVEAR, aka "Chucho" ("PEREZ") for violation of 21 U.S.C. §§ 1906(a), 1904(c)(2): Conspiracy to Transact in Property of Specially Designated Narcotics Traffickers.

3.    The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## STATEMENT OF PROBABLE CAUSE

4.    Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

5.    All times relevant to this complaint, the Office of Foreign Assets Control ("OFAC") of the United States Department of Treasury administered and enforced economic sanctions programs against narcotics traffickers. The Foreign Narcotics Kingpin Designation Act (the "Kingpin Act"), 21 U.S.C. §§ 1901 through 1908, and Title 31, Code of Federal Regulations, Parts 501 and 598, declared a national emergency with respect to the activities of international narcotics traffickers and their organizations, which threatened the national security, foreign policy, and economy of the United States. As part of the sanctions program, the names of persons and entities designated pursuant the Kingpin Act, whose property and interests in property are blocked, are published in the Federal Register and

incorporated into a list of Specially Designated Nationals ("SDN List") with the OFAC program tag "[SDNTK]" to designate Specially Designated Nationals who are narcotics traffickers. The SDN List is readily available through OFAC's web site: http://www.treasury.gov/sdn. United States persons are generally prohibited from using, transferring, or dealing in any property, including funds, in which a "specially designated narcotics trafficker" ("SDNTK") has an interest without authorization from OFAC.

6.    On April 6, 2018, pursuant to the Kingpin Act, OFAC identified and designated PEREZ, as well as entity Gallistica Diamante, aka "Ticket Premier," which PEREZ controlled, as SDNTKs subject to economic sanctions. PEREZ is a music promoter based in Guadalajara, Mexico and was a business associate of DEL VILLAR. Until approximately March 2019, PEREZ was in charge of promoting and arranging concerts in Mexico for artists/musicians associated with and/or under contract with Del Entertainment, Inc. ("Del Entertainment") including an artist I will refer to as "Individual A."

7.    Del Entertainment is a licensed talent agency registered in the State of California. Del Entertainment provided artist representation services, including the booking of musical performances. DEL VILLAR was the Chief Executive Officer of Del Entertainment and a permanent resident alien of the United States. SCALISI was the Chief Financial Officer of Del Entertainment and a United States Citizen. Del Entertainment, DEL VILLAR, and SCALISI are United States

persons, as defined in the Kingpin Act, who did not have authorization from OFAC to conduct transactions with PEREZ or with Gallistica Diamante following PEREZ's and Gallistica Diamante's designations as SDNTKs.

**A.    DEL VILLAR and SCALISI Were Aware of PEREZ's Designation as a SDNTK by OFAC and Continued to Conduct Business with PEREZ**

8.    On or about April 6, 2018, after PEREZ had been designated as a SDNTK by OFAC, employees of Del Entertainment (which, as discussed below, I believe was at the direction of DEL VILLAR) prepared a draft of a public statement to be sent on behalf of Individual A concerning PEREZ's designation as a SDNTK by OFAC and stating that Individual A had "no choice then (sic) to obey US law and not allow the bookings of any of my shows to individuals the Dept of Treasury has deemed sanctioned." This drafted statement was never publicly released. Law enforcement obtained this draft press release from a federal search warrant executed on July 2, 2019, Case No. 2:19-MJ-02714.

9.    On April 19, 2018, I and other law enforcement met with Individual A at the Phoenix Sky Harbor International Airport in Phoenix, Arizona, as Individual A was returning to the United States from Mexico. I served Individual A a letter from OFAC[1] and advised Individual A that, as a United States citizen, he was prohibited under the Kingpin Act from conducting

---

[1] See Exhibit 1 for letter from Department of the Treasury that was provided to Individual A on April 19, 2018.

business or engaging in any kind of financial transaction, directly or indirectly, with PEREZ.

10. On or about April 19, 2018, in a voice message lawfully obtained from a cellular phone belonging to an officer of Del Entertainment ("Individual B"), SCALISI informed Individual B that DEL VILLAR wanted SCALISI to travel to Mexico to meet with PEREZ and another individual in order to collect money that PEREZ owed to a Mexican entity affiliated with Del Entertainment and DEL VILLAR. SCALISI also said that SCALISI was concerned with "creat[ing] a paper trail" between PEREZ and the Mexican entity affiliated with Del Entertainment and DEL VILLAR because PEREZ was "under surveillance, he's under homeland security watch" and that SCALISI would prefer that DEL VILLAR "hid Chucho's [i.e., PEREZ's] company until the, you know, this mess with the government and due process is figured out" – which I believe is a reference to PEREZ's designation as a SDNTK.

11. On or about April 24, 2018, the sister of DEL VILLAR and the Director of Touring Operations for Del Entertainment asked a publicist employed by Del Entertainment to ask DEL VILLAR for information about Individual A's upcoming concert at Aguascalientes, Mexico, and noted that, according to DEL VILLAR's brother, DEL VILLAR was "the one who knows" about the Aguascalientes Concert. I later interviewed this Del Entertainment publicist, who told me that between April 24 and April 27, 2018, DEL VILLAR and other individuals working for Del Entertainment continued to discuss the Aguascalientes Concert being promoted by PEREZ.

12. Based on publicly available information, I know that Individual A did in fact perform at a music concert, organized by PEREZ, in Aguascalientes, Mexico. Due to his late arrival to Aguascalientes, Individual A did not perform until the very early morning hours of April 28, 2018. A video, which I have seen, is publicly available from multiple sources confirming that Individual A performed during the 2018 Aguascalientes concert.

13. On or about April 5, 2019, in Atlanta, Georgia, I interviewed the co-founder of GOGO JETS ("GOGO"), a third-party booking service that was used to charter a private flight for Individual A from Van Nuys, California, to Aguascalientes, Mexico on April 27, 2018. The GOGO co-founder told me that he used WORLDWIDE JET to render the service, and told me the following:

a. The GOGO co-founder received a telephone call from an officer of Del Records[2] (namely, Individual B), requesting a private jet for a Del Records artist to travel to Mexico to perform a concert on the same day. The GOGO co-founder said that same-day bookings were not unusual, but that private flights to Mexico were more challenging because not all aircraft have the appropriate permits to be able to fly to Mexico. Individual B requested a small jet at first; however, the GOGO co-founder only had larger jets available. The GOGO co-founder communicated with Individual B through both email and phone

---

[2] Del Records is an entity affiliated with Del Entertainment.

calls and emailed Individual B rate quotes for the trip. The
GOGO co-founder asked Individual B to email him a photograph of
the credit card that was to be used for the transaction.
Individual B emailed the GOGO co-founder a photo of DEL VILLAR's
American Express credit card. The GOGO co-founder then requested
Individual B to provide, via email, copies of passports for all
of the travelers. In response, SCALISI emailed the GOGO co-
founder photographs of passports for four passengers: Individual
A, Individual B, and two other individuals.[3] The GOGO co-founder
conducted an internet search of Individual B, DEL VILLAR, and
Individual A in order to learn more about his clients. The GOGO
co-founder concluded that Individual B worked at Del Records,
DEL VILLAR was the CEO of Del Records, and Individual A was a
prominent Del Records musician.

b.    Preparing the flight crew and the aircraft for
travel took longer than anticipated, and at one point, WORLDWIDE
JET told the GOGO co-founder that they would be unable to depart
from Van Nuys because the airport in Aguascalientes, Mexico,
would be closed upon arrival. Individual B told the GOGO co-
founder that they knew someone in the government and that it
would not be a problem. Shortly thereafter, WORLDWIDE JET
received confirmation that the flight would be allowed to land

_____

[3] On or about April 27, 2018, SCALISI sent an email
containing photographs of DEL VILLAR's identification and credit
card to a private charter flight company in order to secure a
April 27, 2018 flight from Van Nuys, California, to
Aguascalientes, Mexico, so that Individual A could perform at
the Aguascalientes concert being promoted by PEREZ. The GOGO co-
founder provided me with this email and with the email
containing the photograph of DEL VILLAR's American Express
credit card discussed above.

in Aguascalientes and that the airport would stay open late for them.

c.    Following the completion of the trip, the GOGO co-founder received notice from CHASE bank that DEL VILLAR was disputing the charge for the transaction for the GOGO booking. The GOGO co-founder presented his records to CHASE and the dispute was resolved in favor of GOGO.

**B.    DEL VILLAR, SCALISI, and PEREZ Agreed to Proceed with the Aguascalientes Concert Notwithstanding PEREZ's OFAC Designation**

14.    After Individual B and SCALISI helped book a private charter flight (using DEL VILLAR's credit card) for Individual A to travel from Van Nuys, California to Aguascalientes, Mexico, on April 27, 2018, to perform at the Aguascalientes concert, there was a dispute as to some of the charges. Specifically, on or about June 4, 2018, DEL VILLAR disputed a portion of the cost of the April 27, 2018, private charter flight because DEL VILLAR claimed that the price of the flight had increased above the initially agreed-upon price. The GOGO co-founder provided me with documentation confirming this dispute.

15.    On or about June 14, 2018, in a text message exchange lawfully obtained from Individual B's cellular phone, Individual B requested money from DEL VILLAR related to the disputed portion of the April 27, 2018 private charter flight and said that DEL VILLAR "specifically said chucho [i.e., PEREZ] was going to pay for the flight." DEL VILLAR refused to reimburse Individual B for the money Individual B had requested related to

the private charter flight on April 27, 2018, and instructed

Individual B to "fix[] that issue" because Individual B was "the

one who chose that plane" – referring to the disputed charge

with the private charter flight company – and told Individual B

that DEL VILLAR was "not a Bank." Individual B then told DEL

VILLAR that Individual B "recommended against him performing for

a sanctioned US person, if you recall" – which I believe to be a

reference to Individual A performing at the Aguascalientes

concert promoted by PEREZ.

   C.   **DEL VILLAR and SCALISI Continued to Engage in
        Financial Transactions with PEREZ after the April 2018
        Aguascalientes Concert**

   16. On January 11, 2019, in a lawfully-obtained recorded

conversation between SCALISI and Individual B, after Individual

B informed SCALISI that DEL VILLAR had informed Individual B

that PEREZ had "sent three deposits already," SCALISI asked

Individual B if the deposits had been sent to Del

Entertainment's "Mexican bank account." Based on my knowledge of

this investigation, including bank documents I lawfully obtained

via a MLAT request to Mexico, I believe this is a reference to a

Mexico-based bank account in the name of "DEL MELODIA

ENTERTAINMENT S DE RL DE CV," which I believe was used to

transfer money from Mexico to Del Entertainment. During this

conversation, SCALISI asked Individual B if Individual B knew

"which shows" the deposits from PEREZ corresponded to. SCALISI

then said the deposits from PEREZ previously referenced by DEL

VILLAR would not appear "under Chucho's [i.e., PEREZ's] name"

but that the deposits would be "under the promoter's name";
SCALISI then identified several individuals – including
Individual C and Individual D – whose names would be identified
with deposits as promoters for transactions that, in fact, were
associated with PEREZ.

17. Based on bank records for the Mexico bank account
discussed above, as well as a review of financial records
obtained via a federal search warrant on Del Entertainment
showing the names of Individual C and Individual D (as
referenced by SCALISI above), I believe that Individual C and
Individual D caused the following payments to be sent to the
Mexico bank account on or about the following dates as payment
on behalf of PEREZ for concerts performed by Del Entertainment
artists in Mexico at the behest of DEL VILLAR, SCALISI, and
PEREZ:

a.    On or about August 16, 2018, Individual C, acting
on behalf of PEREZ, caused 300,000 Mexican pesos to be sent to
the Mexico Bank Account as payment for Individual A to perform
at a concert or concerts in Mexico.

b.    On or about September 21, 2018, Individual C,
acting on behalf of PEREZ, caused 250,000 Mexican pesos to be
sent to the Mexico Bank Account as payment for Individual A to
perform at a concert or concerts in Mexico.

c.    On or about September 24, 2018, Individual C,
acting on behalf of PEREZ, caused 150,000 Mexican pesos to be
sent to the Mexico Bank Account as payment for Individual A to
perform at a concert or concerts in Mexico.

d.    On or about November 6, 2018, Individual D, acting on behalf of PEREZ, caused 200,000 pesos to be sent to the Mexico Bank Account as payment for Individual A and/or another artist affiliated with Del Entertainment to perform at a concert or concerts in Mexico.

e.    On or about November 20, 2018, Individual D, acting on behalf of PEREZ, caused 300,000 pesos to be sent to the Mexico Bank Account as payment for Individual A and/or another artist affiliated with Del Entertainment to perform at a concert or concerts in Mexico.

f.    On or about November 23, 2018, Individual D, acting on behalf of PEREZ, caused 300,000 pesos to be sent to the Mexico Bank Account as payment for Individual A and/or another artist affiliated with Del Entertainment to perform at a concert or concerts in Mexico.

g.    On or about December 12, 2018, Individual D, acting on behalf of PEREZ, caused 750,000 pesos (in three separate transactions of 250,000 pesos each) to be sent to the Mexico Bank Account as payment for Individual A to perform at a concert or concerts in Mexico.

h.    On or about December 14, 2018, Individual D, acting on behalf of PEREZ, caused 250,000 pesos to be sent to the Mexico Bank Account as payment for Individual A to perform at a concert or concerts in Mexico.

i.    On or about January 4, 2019, Individual D, acting on behalf of PEREZ, caused 200,000 pesos to be sent to the

Mexico Bank Account as payment for Individual A to perform at a concert or concerts in Mexico.

j.    On or about January 23, 2019, Individual D, acting on behalf of PEREZ, caused 300,000 pesos to be sent to the Mexico Bank Account as payment for Individual A to perform at a concert or concerts in Mexico.

k.    On or about January 29, 2019, Individual D, acting on behalf of PEREZ, caused 500,000 pesos to be sent to the Mexico Bank Account as payment for Individual A to perform at a concert or concerts in Mexico.

18. On or about September 25, 2018, in an email exchange, an employee of Del Entertainment sent photographs of deposit receipts for the September 21, 2018 and September 24, 2018 deposits from Individual C to the Mexico Bank Account and asked SCALISI to confirm the two deposits, to which SCALISI responded that he would check on the deposits the following day.

19. On or about September 28, 2018, Individual A, acting at the direction of and/or with the knowledge of DEL VILLAR and SCALISI, performed at a concert in Mexicali, Mexico, promoted by Individual C on behalf of PEREZ.

20. On or about October 20, 2018, Individual A and another artist affiliated with Del Entertainment, acting at the direction of and/or with the knowledge of DEL VILLAR and SCALISI, performed at a concert in Salamanca, Guanajuato, Mexico, promoted by Individual D on behalf of PEREZ.

21. On or about December 28, 2018, Individual A, acting at the direction of and/or with the knowledge of DEL VILLAR and

SCALISI, performed at a concert in Chiapas, Mexico, promoted by
Individual C on behalf of PEREZ.

22.  On or about February 2, 2019, Individual A, acting at
the direction of and/or with the knowledge of DEL VILLAR and
SCALISI, performed at a concert in San Jose Iturbide,
Guanajuato, Mexico, promoted by Individual D on behalf of PEREZ.

### CONCLUSION

23.  For all of the reasons described above, there is
probable cause to believe that DEL VILLAR, SCALISI, and PEREZ
have committed violations of the Kingpin Act, in violation of
Title 21, United States Code, Sections 1906(a), 1904(c)(2):
Conspiracy to Transact in Property of Specially Designated
Narcotics Traffickers.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __7th__ day of
June, 2022

_____
THE HONORABLE PAUL L. ABRAMS
CHIEF UNITED STATES MAGISTRATE
JUDGE